

www.millerlaw.nyc

Meredith R. Miller, Esq.

Miller Law, PLLC
167 Madison Avenue, Suite 503
New York, NY 10016

**Tel:** (347) 878-2587
**Fax:** (866) 495-6719
meredith@millerlaw.nyc

October 22, 2018

**Via ECF**
Honorable Robert W. Lehrburger
United States District Courthouse
Southern District of New York
500 Pearl Street
Room 1960
New York, NY 10007

    Re:    <u>*Vaca, et al. v. Phoenix ACV Construction Servs., LLC., et al.*,
              Docket No. 18-cv-00207 (PGG)(RWL)</u>

Dear Judge Lehrburger:

       We represent the 15 plaintiffs, Carlos Vaca, Mario Lagua, Mirian Cushqui, Claudina Maria Toala, Roberto Gonzalez, Jefferson Guananga, Luis Pallchizaca, Fany Cushqui, Willan De La Cruz, Cristino A. Rosario, Jose Javier Yungaicela-Garavi, Abel Rolon, Luis Egas Pazmino, Dina Casabamba and Freddy Guananga (collectively, "Plaintiffs"), in the above-referenced wage and hour action pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs write jointly with Phoenix ACV Construction Services, LLC ("Phoenix ACV"), Phoenix RMA Construction Services, LLC ("Pheonix RMA"), Michael Leineek and Richard Kyan (collectively, "Defendants") to request that the Court approve the Settlement and Release Agreement (the "Agreement"), which is submitted simultaneously with this letter as Exhibit 1 (English, with Defendants' signatures) and Exhibit 2 (Spanish, with Plaintiffs' signatures). Plaintiffs' counsel further requests that the Court approve Plaintiffs' attorney fees and costs.[1]

       The parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel. After an initial exchange of information, including the production of time and payroll records for all Plaintiffs, and after extensive analysis of those records by both parties, the terms of the Agreement were negotiated extensively by counsel culminating in a half-day meeting at the office of Plaintiffs' counsel.

       This action raises issues that substantially overlap with those raised by Defendants' former employees in a related action, *Salas, et al v. Phoenix ACV Construction Servs., LLC, et al.* (16-cv-08066). The parties in *Salas*, represented by the same counsel, were able to resolve the matter at a settlement conference before Magistrate Judge Sarah Netburn. Given counsels' familiarity with the issues and the experience at the previous settlement negotiations, we were

---

[1] For the purpose of this application only, Defendants take no position with respect to the reasonableness of counsel's request for fees and costs.

able to resolve this matter efficiently and fairly. As was the case in *Salas,* by entering into the Agreement, Defendants do not admit any liability whatsoever.

## I. Introduction.

In a Complaint filed on January 10, 2018 (dkt #1), Plaintiffs assert claims for unpaid overtime and other wage-related claims arising from construction work that they performed for Defendants. Plaintiffs allege FLSA and NYLL violations and seek: (1) unpaid overtime and (2) penalties for wage notice violations.

Given that Plaintiffs' claims arise, in part, under the FLSA, the Agreement must be approved by this Court pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). In evaluating whether a proposed settlement is fair and reasonable, "a court should consider the totality of circumstances including, but not limited to, the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the produce of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012) (citations and quotation marks omitted).

## II. Plaintiffs' Claims for Unpaid Overtime and Wage Notices.

Plaintiffs claim that they were paid at their regular hourly rate for overtime hours. Based upon available records and each Plaintiff's recollection of their approximate time period of employment, hours worked per week, and rate of hourly pay, Plaintiff's counsel estimated each Plaintiff's unpaid overtime (.5 x hourly rate for each overtime hour worked). A detailed chart of this initial calculation is attached hereto as Exhibit 3. The estimates of unpaid overtime were initially calculated for each Plaintiff as follows (and totaling $103,247.80):

| **Name** | **Estimated Unpaid Overtime** |
|---|---|
| **Carlos Vaca** | $10,575.00 |
| **Mario Lagua** | $2,676.80 |
| **Mirian Cushqui** | $7,540.00 |
| **Claudina Maria Toala** | $1,530.00 |
| **Roberto Gonzalez** | $7,837.50 |
| **Jefferson Guananga** | $1,950.00 |
| **Luis Pallchizaca** | $3,750.00 |

| Name | Amount |
|---|---|
| **Fany Cushqui** | $7,897.50 |
| **Willan De La Cruz** | $3,780.00 |
| **Cristino Rosario** | $18,450.00 |
| **Jose Javier Garavi** | $1,360.00 |
| **Abel Rolon** | $15,795.00 |
| **Luis Egas Pazmino** | $11,070.00 |
| **Dina Casabamba** | $5,508.00 |
| **Freddy Guananga** | $3,528.00 |

Additionally, Plaintiffs estimate NYLL wage notice violations of $50 per week, per Plaintiff.

Defendants challenged most of the hours Plaintiffs estimated that they worked. Defendants also produce time records to support their challenge to Plaintiffs' estimated hours. Defendants also contended that Plaintiffs were appropriately compensated for overtime. Plaintiffs question the reliability and completeness of Defendants' records. As such, there is a *bona fide* dispute between the parties regarding Plaintiffs' wage and hour claims.

The parties were able to reach a compromise that settles the case for $130,000.14 and, after attorneys' fees and costs totaling $43,326.36 (as discussed below), provides Plaintiffs with $86,673.78. The settlement provides each Plaintiff with the following total amount, to be paid in 18 equal monthly installments:

| Name | Total Amount |
|---|---|
| **Carlos Vaca** | $9,100.44 |
| **Mario Lagua** | $2,600.28 |
| **Mirian Cushqui** | $7,367.04 |
| **Claudina Maria Toala** | $1,301.76 |
| **Roberto Gonzalez** | $6,067.08 |
| **Jefferson Guananga** | $1,733.58 |

| | |
|---|---|
| **Luis Pallchizaca** | $4,333.68 |
| **Fany Cushqui** | $7,367.04 |
| **Willan De La Cruz** | $3,033.54 |
| **Cristino Rosario** | $13,867.38 |
| **Jose Javier Garavi** | $866.88 |
| **Abel Rolon** | $12,567.42 |
| **Luis Egas Pazmino** | $9,533.88 |
| **Dina Casabamba** | $5,200.38 |
| **Freddy Guananga** | $1,733.40 |

The settlement proceeds were apportioned among the Plaintiffs based on their relative percentage of total overtime hours worked by all Plaintiffs and weeks worked for purposes of wage notices, as well as based upon the relative risks of their individual cases. Each Plaintiff has acknowledged their allocation and agreed that it is fair and reasonable in light of their individual estimates of overtime and the relative risks of their individual cases. Furthermore, under this Agreement, each Plaintiff receives a sizeable portion (in most cases, all or nearly all) of their estimated unpaid overtime wages.

### III.   The Agreement is Fair and Reasonable.

The Agreement constitutes the parties' effort to resolve this dispute in an amicable fashion through arm's length bargaining, and allows the parties to avoid the time, uncertainty, costs and stress that they would undergo if this case proceeded to discovery and motion practice. The early stage of this litigation was one of the factors that induced both sides to reach a compromise.

We believe that, in light of the uncertainties associated with establishing Plaintiffs' precise number of overtime hours and Plaintiffs' strong desire to avoid future legal proceedings, the amounts payable to each Plaintiff falls within the range of reasonableness in comparison to their estimated damages. *See Beckert v. Rubinov*, 15 Civ. 1951, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(finding that the "amount [plaintiff] would receive under the Agreement ($29,557.97) is a substantial proportion of the maximum possible recovery he identifies ($114,700)"). Here, the parties were able to reach an agreement at an early stage of proceedings, shortly after the filing of the complaint, and before incurring the costs of depositions, motion practice and trial. *See Burgos v. San Miguel Transp., Inc.*, 2016 U.S. Dist. LEXIS 166248, *6, 2016 WL 7015760 (S.D.N.Y. Dec. 1, 2016)(citing early stage of the case as one of the factors supporting the fairness of a settlement that was substantially below the amount that plaintiff initially contemplated). Furthermore, here, as in *Burgos*, there is no assurance that Plaintiffs will be awarded liquidated damages under FLSA or NYLL if this matter were to proceed to trial.

Moreover, the settlement was in no way affected by any "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over a period of months, culminating in a half-day in-person meeting of counsel. The parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial portion of possible recovery under the FLSA and NYLL. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation.

Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation.

Finally, it cannot be disputed that the Agreement was the product of negotiations that were devoid of any semblance of fraud or collusion. Indeed, negotiations between the parties' counsel were amicable but contentious, and both sides were required to make serious compromises.

**IV. Application for Attorneys' Fees.**

Under both the FLSA and NYLL, Plaintiffs are entitled to recover attorneys' fees and costs. Attorneys' fees in FLSA settlements are examined to ensure that the interests of plaintiff's counsel in his or her own compensation did not have an adverse impact on the extent of relief counsel obtained for the client. *See Wolinsky*, 900 F. Supp. 2d at 336.

In this case, the task of estimating unpaid overtime for 15 Plaintiffs was particularly difficult because of the necessity to meet with each Plaintiff individually, as well as the time required to attempt to decipher Defendants' records. We undertook an arduous and time-consuming process of relying on Defendants' incomplete records, combined with the recollections of each Plaintiff. Further, we negotiated extensively and in detail with Defendants' counsel. Among other things, significant time was devoted to negotiating terms and provisions to help ensure that the monthly settlement payments, which are spread out over 18 months, are actually paid.

The settlement provides Plaintiffs' attorneys with reimbursement of costs totaling $1,526.43 and attorneys' fees in the amount of $41,799.93. Plaintiffs' counsel seeks approval these fees, which represent approximately 32.5% of the net total settlement amount of $128,473.71, i.e., after reimbursement of $1,526.43 in costs. Plaintiffs' counsel represents Plaintiffs on a contingent basis, pursuant to retainer agreements, which provide for attorneys' fees of one-third of the net recovery. Copies of the retainer agreements are attached hereto as Exhibit 4.

Co-counsel Rapaport Law Firm's time spent on this matter and the expenses reasonably incurred are set forth in the accurate, detailed and contemporaneous records attached hereto as Exhibit 5. Exhibit 6 is the history bill of Miller Law, PLLC. Given that the parties were able to reach an early settlement, the lodestar in the attached billing records (Exhs. 5 and 6) is less than the amount of fees requested. In light of the risks associated with bringing a case, contingency fees of one-third are routinely approved in this Circuit. *Sierra v. Mid City Gym and Tanning LLC*, No. 16 Civ. 2892, 2017 WL 4862070 *4 (S.D.N.Y. Oct. 25, 2017); *In Gaspar v. Personal Touch Moving, Inc.*, No. 13 Civ. 8187, 2015 WL 7871036 *2 (S.D.N.Y. Dec. 3, 2015).

Moreover, using the lodestar as a "cross check" further demonstrates the reasonableness of the amount of fees requested. The lodestar in this case (not including costs and disbursements) is $26,851.42, reflecting a billing rate of $400/hr for Meredith R. Miller of Miller Law, PLLC and of counsel to Rapaport Law Firm, PLLC; $400/hr for Marc Rapaport, the managing member of Rapaport Law Firm PLLC; $115 p/hr for Marcela Cabezas and $100/hr for Ana Alcantara and Karina Gulfo, paralegals at Rapaport Law Firm, PLLC. These rates have been held to be reasonable in the Southern District of New York. *See Allende v. Unitech Design,*

*Inc.*, 783 F. Supp. 2d 509, 514-15 (S.D.N.Y. 2011)(collecting cases on reasonable hourly rates). Further, the multiplier of the lodestar is approximately 1.557, far less than multipliers approved in similar cases. *See Munecas v. Bold Food, LLC,* No. 09 Civ. 00440 (DAB), 2010 WL 3322580, at *10 (S.D.N.Y. Aug. 23, 2010)("Courts regularly award lodestar multipliers from 2 to 6 times lodestar."); *see also Sakiko Fukiwara v. Sushi Yasuda Ltd*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)("[A] multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.").

The attorneys and staff who were involved in this case, and whose time is reflected in the attached billing records, are:

1. **Marc Rapaport (Rapaport Law Firm, PLLC).**

Marc Rapaport is the managing member of Rapaport Law Firm, where he began his practice in 1995. He has more than twenty years of experience litigating employment matters on behalf of employees in New York. He received a J.D. from Georgetown University Law Center in 1992. Thereafter, he worked as a Staff Attorney for the United States Department of Justice in Washington, D.C. He represents employees in a broad range of discrimination and wage/hour matters. He is an active member of the National Employment Lawyers Association and the National Employment Lawyers Association New York. He believes that his clients also benefit from his broader experience beyond the field of employment law, including his experience litigating commercial disputes in state and federal courts.

For more than 20 years, Mr. Rapaport has endeavored to represent immigrant workers who often find it difficult to obtain skilled legal representation. In recent years, he has particularly focused on representing immigrant workers in wage cases, by way of example, the following matters: Armas et al. v. SKYC Management LLC et al., 2014 CV 6360 (PGG)(HBP); Castillo et al. v.140 Ash Associates, LLC, et al., 16-cv-5216 (FB)(PK); Salas et al. v. Phoenix ACV Construction Services, LLC et al., 16-cv-08066 (LAP); Flores et al. v. Claremont Properties, 17-cv001316 (KBF); and Montalvo, et al. v Arkar, et al., 17-cv-06693 (AJN). His requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

2. **Meredith R. Miller (Miller Law, PLLC; of counsel to Rapaport Law Firm, PLLC).**

Meredith R. Miller has served as Of Counsel to Rapaport Law Firm for more than twelve years. She received a J.D. from Brooklyn Law School in 2000. Thereafter, she started her legal career in Albany, clerking for the New York Court of Appeals. She then served as a litigation associate at Proskauer Rose, LLP in New York City. In 2004, she accepted a teaching fellowship at Temple Law School in Philadelphia, which began her career as a law professor. Ms. Miller teaches contract, business and employment law at the Touro College, Jacob D. Fuchsberg Law Center in Long Island, New York. She has written and lectured extensively on these subjects. Additionally, she has served as co-counsel with Mr. Rapaport on over a dozen wage cases representing immigrant workers. Her requested hourly rate of $400.00 has been approved by multiple judges in the Second Circuit. *See, e.g., Montalvo v. Arkar, Inc.*, No. 17-cv-6693, 2018 U.S. Dist. LEXIS 79667 (S.D.N.Y. May 10, 2018).

3. **Marcela Cabezas (Rapaport Law Firm, PLLC).**

Marcela Cabezas has been a paralegal at Rapaport Law Firm since 1998. Ms. Cabezas graduated from New York Institute of Technology with a B.S., and she also has a certificate from the New York Paralegal School. Ms. Cabezas speaks fluent Spanish. Because of her language skills and extensive experience providing paralegal support in wage and employment cases, Ms. Cabezas plays a crucial and effective role in the firm's representation of immigrant workers. For nearly two decades, she has served as a point of contact for the firm's Spanish-speaking clients.

4. **Ana Alcantara (Rapaport Law Firm, PLLC).**

Until earlier this year, Ana Alcantara was a paralegal at Rapaport Law Firm. Ms. Alcantara graduated from SUNY Plattsburgh with a B.S. Ms. Alcantara speaks fluent Spanish. Because of her language skills, Ms. Alcantara served an integral role in representation of wage and hour plaintiffs.

5. **Karina Gulfo (Rapaport Law Firm, PLLC)**

Karina Gulfo joined Rapaport Law Firm, PLLC as a paralegal in August 2018. Ms. Gulfo is fluent in Spanish, a skill which is essential to our effective representation of immigrant workers. Previously, Ms. Gulfo was a paralegal for more than three years at a litigation law firm where she similarly had significant responsibilities involving communications with immigrant clients. Ms. Gulfo is also an undergraduate student at CUNY (John Jay College of Criminal Justice)

*** 

We respectfully request that the Court approve the Agreement, as well as the amount of legal fees requested herein. The parties thank the Court for its attention to this matter.

Respectfully yours,

Meredith R. Miller

Encls. (Exhibs 1 – 6)

cc: Aaron Solomon, Esq. (*Via ECF only*)